**In re the Marriage of Deborah Lynn (Gaddis) MEDAWAR, Appellant,**

v.

**Michael GADDIS, Respondent.**

**No. WD 41307.**

Missouri Court of Appeals, Western District.

Oct. 31, 1989.

**324**

Anita I. Rodarte, Kansas City, Mo., for appellant.

Patrick Beeman, Elinor K. Newman, Clarksville, Tenn., for respondent.

Before LOWENSTEIN, P.J., and KENNEDY and GAITAN, JJ.

GAITAN, Judge.

This appeal involves the modification of a decree of dissolution respecting child custody, support and visitation. The facts are not disputed.

The marriage of the parties was dissolved on July 8, 1981, in the Circuit Court of Clay County, Missouri. The couple had two children during the marriage, Joni Marie Gaddis, born December 4, 1977, and Jackie Ann Gaddis, born April 10, 1980. The circuit court awarded custody of the children to appellant Deborah Gaddis Medawar, and granted respondent, Michael Gaddis reasonable visitation rights with the children upon reasonable notice to appellant.

In August, 1983, appellant and the children moved to Phoenix, Arizona. Respondent was advised of the move on the day of the move. Appellant kept the court apprised of her changed location as well.

Following the move to Arizona, the children returned to Missouri twice a year, typically for one week during the summer and one week at Christmas. The children's transportation for these trips was financed exclusively by members of appellant's family. During the visits to Missouri, the children usually visited with both appellant's family and their father.

A Uniform Reciprocal Enforcement of Support Act (URESA) petition for support was initiated in the state of Arizona seeking child support arrearage from respondent in the amount of $360 and an increase of child support. The URESA petition was filed in the Circuit Court of Clay County on August 4, 1988.

On September 23, 1988, respondent filed his answer to the URESA petition and a motion to modify custody. In the motion to modify, respondent prayed that custody of the children be transferred to him and that his child support obligation be abated. Respondent's verified motion acknowledged that the children resided in Maricopa County, Arizona, at the time his motion was filed and that they had lived in Arizona since August, 1983.

Appellant filed a motion to dismiss respondent's motion to modify for lack of subject matter jurisdiction. She maintained that, in accordance with the Uniform Child Custody Jurisdiction Act, Arizona and *not* Missouri was the sole forum in which the issue of custody could be litigated.

In December, 1986, the children were in Missouri visiting with appellant's family. During this visit, respondent filed an emergency motion for temporary custody, alleging that he had been denied visitation with the children as grounds for the emergency. On the same day that the emergency motion was filed, the court issued an ex parte order denying the motion for temporary custody but granting specific visitation with the children from December 30, 1986, to January 7, 1987. As a consequence, respondent had visitation with the children during the Christmas, 1986 holiday for approximately nine days.

On June 30, 1987, the presiding judge of the Clay County Circuit Court assigned the motion to modify and the URESA petition to Honorable John R. Hutcherson. Thereafter, on July 27, 1987, appellant filed an application for change of judge pursuant to Missouri Supreme Court Rule 51.05. In accordance with Rule 51.05, appellant's attorney served all parties with a copy of the application and notice of the time it was to be presented to the court.

The application for change of judge was noticed up by appellant's attorney for disposition on August 19, 1987. The court on its own motion continued the matter to September 4, 1987. On August 17, 1987, appellant's attorney wrote to Judge Hutcherson indicating that she had received conflicting information as to when the application for change of judge would be heard. The same letter asked the court to advise her as to the correct court date. The record does not reveal any effort to notify appellant's attorney of the correct date of the hearing on the application. On September 2, 1987, respondent's attorney was the only person present for the hearing on the application for change of judge. Judge Hutcherson denied the application.

On January 12, 1988, Judge Hutcherson entered an order overruling appellant's motion to dismiss for lack of subject matter jurisdiction. The court found that "there is substantial evidence concerning the children's present and future care, protection, training and personal relationships in this state and further, the children and respondent have a significant connection with this state."

The motion to modify and URESA petition were tried on April 1, 1988, before Judge Hutcherson. Respondent testified that since August, 1983, he saw the children at least once a year, usually at Christmas. He complained that on one occasion in July, 1986, the children were in town for a summer visit with appellant's family, but he didn't learn of the visit until the children had gone. Appellant's stepmother testified that she tried to notify respondent of this visit, but he couldn't be found. Respondent had moved and. left no forwarding address.

During a visit in December, 1986, respondent claimed that appellant's father refused his request to see the children because he had not been paying child support. Thereafter, he obtained the temporary visitation order and spent approximately nine days with the children.

During the nine day visit in December, 1986, appellant's sister-in-law, Denise Motz, encountered the children one evening, alone and unsupervised, at a roller skating rink. The children were distant, scared and unhappy. Jackie, the seven year old, complained that she had to sleep with her father during the visit. The little girl cried and asked to go home with Denise rather than return to her father's home.

Several members of appellant's family testified that they shared in the cost to fly the children to Kansas City, Missouri, twice a year for a week long visit. On each occasion, they tried to notify respondent of the children's visit. Each of appellant's relatives denied ever refusing visitation between respondent and the children during these trips.

Respondent admitted that he never attempted to visit the children in Arizona

during the entire time the children resided there. Nor did he ever offer to furnish transportation for the children to travel to Missouri for a visit.

At the time of trial, respondent had custody of his sixteen year old daughter, Michelle, from a prior marriage. In addition to Michelle, respondent shared his home with Christine Partridge, a former wife. When asked whether he felt this would be a healthy environment for the two younger children, respondent replied he would move the ex-wife out if he got custody.

Respondent requested that he be awarded custody of the two children. In the alternative, he sought an award of specific visitation rights, including one month in the summer and some time during the children's Christmas vacation from school.

At the conclusion of the evidence, the trial court entered a temporary order directing the parties to appear on July 20, 1988, for a final hearing of the matter. The temporary order granted respondent visitation from June 15, 1988, to August 17, 1988, and directed appellant to advance the costs of transporting the children to and from the State of Missouri.

Appellant did not appear in court on July 20, 1988, although she was represented by counsel. Appellant's attorney advised the court that appellant continued to believe the Missouri court was without jurisdiction to enter a custody order and, therefore, she did not plan to appear in court with the children. No further evidence was heard in the matter.

The order of modification was entered on October 4, 1988, transferring custody of the two children to respondent. The trial court granted appellant restricted visitation for three weeks in the summer and one week at Christmas; appellant's visitation privileges were confined to the greater Kansas City metropolitan area. Finally, respondent's child support obligation was abated.

## I.

The presiding judge assigned the motion to modify and URESA petition to Judge Hutcherson on June 30, 1987. Although the record does not reveal when attorneys for the parties were notified of the assignment, appellant's application for change of judge was timely filed on July 27, 1987. A copy of the application and notice of the date and time that it would be presented to the court was served on opposing parties.

The application for change of judge was noticed up by appellant's attorney for disposition on August 19, 1987. The court on its own motion continued the matter to September 4, 1987. On August 17, 1987, appellant's attorney wrote to Judge Hutcherson indicating that she had received conflicting information as to when the application for change of judge would be heard. She asked the court to advise her as to the correct court date. The record does not reveal any effort to notify appellant's attorney of the correct date of hearing on the application.

On September 2, 1987, respondent's attorney was the only person present for the hearing on the application for change of judge. The application was denied simply on the basis that respondent's attorney opposed the change. This ruling is a matter of record and was handled as follows:

THE COURT: Gaddis versus Gaddis, 180–1462.

MR. BEEMAN: Pat Beeman, Judge, for Respondent.

THE COURT: Okay.

MR. BEEMAN: I don't see anyone else this morning.

THE COURT: Do you oppose the motion for change of judge?

MR. BEEMAN: Yes, I do, Judge.

THE COURT: Motion for change of judge denied.

■ Missouri Supreme Court Rule 51.05 concerning change of judge procedure provides "[a] change of judge *shall* be ordered in any civil action upon the filing of a written application therefor by any party or by his agent or attorney." The application need not allege or prove any cause for such change of judge and need not be verified. [Emphasis added]. Rule 51.05(a). The rule allows a civil litigant a virtually unfettered right to unilaterally disqualify a judge irrespective of the reason. *State ex rel. Heistand v. McGuire*, 701 S.W.2d 419, 420 (Mo.banc 1985).

The rule requires only that the application be filed no later than thirty days after the parties or their attorneys have been notified of the designation of the trial judge. Rule 51.05(b). The only other requirement is that a copy of the application and notice of the time when it will be presented to the court shall be served on all parties. Rule 51.05(c). Upon the proper and timely filing of the request for change of judge, the court has no discretion but to certify the case to another judge for determination. *State ex rel. Raack v. Kohn*, 720 S.W.2d 941, 943 (Mo.banc 1986).

Appellant complied in every way with the requisites of Rule 51.05. The fact that neither she nor her counsel were present at the hearing does not alter her peremptory right to a change of judge. This is particularly true where there is some question as to whether the appellant's absence was due to the court' failure to notify her attorney of the correct hearing date. Similarly, respondent's bare opposition to the application does not defeat her absolute right to disqualify the judge. "The right of a defendant to disqualify the judge 'is one of the keystones of our legal administrative edifice' and our courts therefore adhere to a rule of liberal construction in favor of the right to disqualify." *State ex rel. Horton v. House*, 646 S.W.2d 91, 93 (Mo.banc 1983).

The trial judge had no jurisdiction other than to grant the change of judge and transfer the cause to another judge for determination. Accordingly, Judge Hutcherson was without jurisdiction to hear the motion to modify and his judgment in the matter is a nullity. *See, Brown v. Brown*, 723 S.W.2d 93, 94 (Mo.App.1987); *State ex rel. Raack v. Kohn*, 720 S.W.2d at 944.

The judgment of the trial court is reversed and the case is remanded for trial in accordance with this opinion.

All concur.